CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUN 0 8 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| FABRIKO ACQUISITION CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>DEAN PROKOS; GREEN LAKE MARINA PROPERTIES, L.L.C.; STEVEN R. SORENSON,<br><br>*Defendants.* | CIVIL ACTION NOS. 6:04-CV-00018<br>6:04-CV-00045<br><br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Plaintiff Fabriko Acquisition Corporation ("FAC") has filed these actions against Dean Prokos ("Prokos"), Green Lake Marina Properties, LLC ("Green Lake Marina"), and Steven R. Sorenson ("Sorenson"). Defendants all have moved to dismiss, claiming that they are not subject to *in personam* jurisdiction in Virginia. For the reasons that follow, these motions shall be denied. Nevertheless, the Court shall transfer venue pursuant to 28 U.S.C. § 1404(a).

I.

This case concerns the unraveling of a multi-party transaction for the purchase of real property. FAC is a Virginia corporation with its principal place of business in Appomattox, Virginia. On August 29, 2001, FAC entered into an agreement (the "Net Lease Agreement") with Alton Prillaman, an attorney and businessman in Roanoke, Virginia, concerning certain real

1

property that he owned in Green Lake, Wisconsin ("the Property"). Under the agreement, Prillaman leased the Property to FAC for eighteen months, whereupon FAC had the right to purchase the Property for $261,750.00 so long as FAC first repaid to Prillaman an existing loan amounting to $330,000.00. In essence, the agreement allowed FAC acquire the Property through Prillaman's financing and ultimately sell the Property at a profit to a subsequent purchaser. Any profit above the total of $591,750.00 plus interest that FAC owed to Prillaman would go to FAC. To protect the agreement, FAC originally attempted to put the deed to the Property in escrow to prevent Prillaman from independently selling the Property. For whatever reason, however, the deed ultimately remained in Prillaman's possession.

In its search for a subsequent purchaser, FAC placed a sign on the Property in Wisconsin, which listed a local Wisconsin telephone number. Calls to that number, however, were automatically rerouted to FAC's offices in Virginia.

In October 2003, Defendant Prokos, a Wisconsin citizen and businessman, contacted FAC using the local telephone number to inquire about purchasing the Property for his business, Green Lake Marina. Green Lake Marina provided marina services, including winter boat slip storage, to private boat owners. Prokos acknowledges that soon after he began negotiating with FAC, he became aware that FAC was located in Virginia and that his phone calls were going there. Over the course of negotiations, he made phone calls and sent faxes to FAC using not only the local Wisconsin phone number, but also using a long distance Virginia phone number.

The negotiations between Prokos and FAC continued from October 2003 through late February 2004. Because any sale of the Property required Prillaman to sign over the deed, Prillaman was also a party to the negotiations. Thus, Prokos communicated with both FAC and

2

Prillaman in Virginia during this period. With winter setting in, Prokos insisted on having preliminary access to the building so that he could begin housing boats there for the winter. FAC agreed, but as the negotiations dragged on, FAC eventually came to insist that Prokos pay rent if the deal were not completed promptly. Finally, at the end of February 2004, the parties appeared to come to an agreement, whereby Prokos would purchase the Property for $850,000.00 and close by April 16, paying back rent of $750.00 per month if Prokos were unable to close by that date. On February 27, 2005, Prokos signed this contract and sent it to FAC, who signed it and sent it to Prillaman for his signature. Ultimately, this is as close as the parties came to consummating the deal.

From the very beginning of the negotiations, Defendant Sorenson also became involved. Sorenson is a Wisconsin attorney who had been involved in earlier transactions related to the Property. The exact nature of Sorenson's involvement both before and during the negotiations at issue, however, is contested. Plaintiff alleges that Sorenson represented FAC during the Net Lease Agreement with Prillaman and, having formed an attorney-client relationship with FAC at that time, was privy to confidential information about FAC's agreement with Prillaman. FAC further claims that Sorenson subsequently came to represent Prokos in the negotiations at issue, during which he disclosed this privileged information to Prokos. By disclosing the information, Sorenson allegedly convinced Prokos that he could get a better deal if he pursued the negotiations directly with Prillaman rather than with FAC, effectively cutting FAC out of the deal. For his part, Sorenson denies that he ever had an attorney-client relationship at any point with either FAC or Prokos. He insists that during the Net Lease Agreement he did not represent either party involved, but rather that he merely represented Prillaman in his original acquisition

3

of the Property prior to the Net Lease Agreement. Sorenson further claims that during the Prokos negotiations, he acknowledged his earlier representation of Prillaman and therefore insisted that he could only act as a facilitator. His role, therefore, was not to represent any party but to convey the offers between the parties. Sorenson had hoped that he ultimately would be paid for these services.

Regardless of the nature of Sorenson's involvement and his exact actions, it is clear that by March 2004, the February 27, 2004 agreement was not going forward as expected. Instead of dealing with FAC, Prokos and Prillaman began negotiating a sale of the Property individually, with the effect of circumventing FAC's claimed right to repurchase the Property from Prillaman and resell it. Although FAC continued to contact Prokos, Prokos did not return any of its phone calls. On March 31, FAC wrote Sorenson demanding that Prokos pay rent because the "real estate transaction has stalled." On April 21, FAC contacted Sorenson by phone, and in returning the call, Sorenson confirmed that Prokos was dealing directly with Prillaman rather than FAC. The following day, on April 22, Prokos and Prillaman allegedly entered into a written contract for the Property.

In light of these developments, FAC promptly took legal action. On April 23, FAC filed suit against Prillaman in Virginia state court for failing to deliver the deed to the Property. On April 28, FAC also sued Prokos, Green Lake Marina, and Sorenson in this Court on five counts: one count of legal malpractice against Sorenson, three counts of business conspiracy/interference against Sorenson and Prokos, and one count of unlawful detainer against Prokos. This Court held a hearing on the matter on May 5, 2004, in which Plaintiff voluntarily dismissed Green Lake Marina from the action in order to satisfy the Court's jurisdictional concerns. That action left

Prokos and Sorenson as the sole Defendants in the complaint.

As a result of these lawsuits, the parties engaged in new negotiations. A preliminary agreement was soon reached whereby the litigation will be dismissed if Prokos did indeed purchase the building. On May 3, 2004, the parties met in Roanoke, Virginia to complete a settlement of the case. Prillaman and representatives for FAC were present in person, and Prokos participated by phone. Apparently, Sorenson did not participate. The parties agreed to modify the contract between Prokos and Prillaman such that it included FAC once again. Ultimately, the parties executed a contractual amendment to this effect on May 25, 2004. On June 2, 2004, FAC dismissed its lawsuit in this Court without prejudice so that Prokos could close on the Property, retaining its right to reopen the case if Prokos did not perform on the agreement.

Several weeks later, Prokos requested an extension of time for closing on the Property until June 30, 2004. FAC and Prillaman consented. By June 30, however, Prokos still had not closed on the Property. Ultimately, therefore, FAC moved to reinstate its original complaint ("Complaint #1"), which this Court granted on September 25, 2004. On September 21, 2004, FAC also filed a separate complaint ("Complaint #2") against Dean Prokos and Green Lake Marina Properties for breach of contract. For purposes of facilitating litigation, this Court consolidated these two actions by an Order dated December 15, 2004.

Now pending before this Court are motions to dismiss by each of the parties to dismiss based on lack of personal jurisdiction, or in the alternative to transfer venue.[1]

---

[1] In light of procedural posture of the case, the motions of Prokos and Sorenson concern both Complaint #1 and Complaint #2. Although this Court dismissed Green Lake Marina from Complaint #1, Green Lake Marina joins in Prokos's motion to dismiss both Complaints pursuant

5

II.

The Due Process Clause of the Fourteenth Amendment limits the power of a court to render a valid personal judgment against a nonresident defendant. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). A court may exercise personal jurisdiction over a nonresident defendant so long as that defendant has certain minimum contacts with the forum, such that maintenance of an action there does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *See also Burger King v. Rudzewicz*, 471 U.S. 462 (1985). The circumstances of each case must be examined to ascertain whether the requisite minimum contacts are present. *Kulko v. California Superior Court*, 436 U.S. 84, 92 (1978); *Witt v. Reynolds Metals Co.*, 240 Va. 452, 454 (1990). While even a single contact may be sufficient to meet the Due Process requirements, the contact must constitute a "substantial connection" with the forum state that clearly demonstrates that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Implicit in finding that personal jurisdiction comports with fair play and substantial justice is a judgment that "the burden on the defendant . . . will be appropriate in light of other relevant factors." *World-Wide Volkswagen*, 444 U.S. at 292. These factors include "the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to

---

to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citations omitted).

Furthermore, the Due Process Clause does not actually confer any jurisdiction on courts, but rather merely defines the outer bounds of jurisdictional power. Thus, when determining whether personal jurisdiction exists, courts must look not only to constitutional requirements, but also to the scope of personal jurisdiction conferred by the forum state's long arm statute.

III.

A.

Defendants first contend that they do not have sufficient minimum contacts with Virginia to be subject to personal jurisdiction consistent with the Due Process Clause. The Court disagrees. Even accepting their versions of the relevant events, Prokos, Green Lake Marina, and Sorenson had more than sufficient contacts with the Commonwealth of Virginia such that subjecting them to personal jurisdiction there is consistent with due process. Put simply, Defendants knowingly engaged in protracted negotiations for more than six months with FAC, a Virginia corporation, and Prillaman, a Virginia businessman. Prokos acknowledges that his negotiations with FAC included not merely phone calls to a local Wisconsin number, but also phone calls directly to FAC in Virginia. Indeed, regardless of which phone number Prokos was using, he was aware that all of his phone calls ultimately found their way to FAC in Virginia. Moreover, even from the beginning of the negotiations, Prokos was in contact Prillaman in

7

Virginia, apparently in hopes that Prillaman would partially finance his purchase. As the negotiations continued, Prokos only had increasingly extensive contact with Prillaman in Virginia, as the two apparently engaged in an individual contract together. As a result of these various negotiations between all parties, Prokos ultimately transmitted various contractual offers to Virginia, both to FAC and to Prillaman. In this sense, Prokos's contact was ongoing and extensive. For his part, Sorenson was the fundamental conduit for nearly every one of these Virginia contacts. Even accepting his claim that he was merely acting as a facilitator for the negotiations, Sorenson coordinated them and necessarily had extensive contacts with Virginia in effecting them, including telephone calls and written communications. Further, the very basis of Sorenson's involvement in these negotiations was his earlier contact with Virginia, where Sorenson admittedly acted as a legal representative in Virginia during Prillaman's acquisition of the Property. For these reasons, both Prokos and Sorenson certainly have availed themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253.

Prokos's reliance on *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533 (1977), is misplaced. *Danville Plywood* concerned a Virginia plaintiff that sold plywood panels to a Pennsylvania corporation. In transacting the sale, the plaintiff's salesman had visited the defendant at its plant in Pennsylvania, where the defendant placed its order. Although this order provided for the panels to be shipped F.O.B. from Danville, Virginia, thereby technically rendering performance of the contract Virginia, the Virginia Supreme Court ruled that this connection was insufficient to satisfy the minimum contacts test of *International Shoe*, and thus Virginia lacked *in personam* jurisdiction over the defendant. *Id.* at 535. Unlike the defendant in

8

*Danville Plywood*, however, Prokos did not simply place an order in Wisconsin after a sales representative visited him in Wisconsin. Instead, as discussed above, Prokos was an active participant in communications directed toward Virginia. Not only did these communications last more than six months, but also they culminated in various contracts that were either executed or intended to be executed in Virginia. For this reason, *Danville Plywood* is distinguished.

Nor is the Court convinced that the circumstances are analogous to *Viers v. Mounts*, 466 F. Supp. 187 (W.D. Va. 1979), in which the court found a lack of sufficient contacts to satisfy constitutional minimum contacts. *Viers* considered a plaintiff who had contacted a Virginia defendant by phone and in person to negotiate the construction of a house in Kentucky. Although the plaintiff claimed that an oral contract had been made in Virginia, it was not disputed that the "[written] contract upon which this suit is brought was executed in Kentucky; the contract was allegedly breached in Kentucky; and the work performed under the contract is located in Kentucky." *Id.* at 191–92. These facts led the court to conclude that the defendant was not subject to *in personam* jurisdiction in Virginia. By contrast, in the current dispute, Prokos not only negotiated directly with the plaintiffs in Virginia regarding the Property, but also sent the contracts directly to Virginia for execution. Accordingly, Defendants' contact was more than "mere contract negotiations carried out in Virginia between a state citizen and a nonresident, with execution and performance of the contract in a foreign forum." *Id.* at 191.

Furthermore, it is undeniable that constitutional minimum contacts also exist as to the breach of contract claim from Complaint #2 against Prokos and Green Lake. The parties do not dispute that Prokos attended by phone a settlement conference in Roanoke, Virginia, in which settlement terms were reached in principal. Subsequent to this settlement, Prokos also signed a

9

written settlement agreement and sent it to Prillaman in Virginia, where the settlement agreement would be executed by the other parties. These acts are more than sufficient to demonstrate that Prokos and his company, Green Lake, have minimum contacts with Virginia as to the issue of breach of that Virginia settlement agreement.

For the foregoing reasons, Defendants' conduct is sufficient to satisfy the constitutional test for minimum contacts.

B.

Defendants also argue that even if their actions satisfy the constitutional requirements of the Due Process Clause, they are not subject to jurisdiction in Virginia because the Virginia Long Arm statute is not broad enough to encompass their actions. Plaintiff has argued that Defendants are subject to personal jurisdiction in Virginia under either subsection (A)(3) or subsection (A)(4) of the Virginia Long Arm Statute. The statute provides in relevant part that:

> A. A court may exercise personal jurisdiction over a person, acting directly or through an agent, as to a cause of action arising from the person's:
> . . .
> > (3) Causing tortious injury by an act or omission in this Commonwealth;
> > (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Va. Code Ann. § 8.01-328.1(A).

Defendants argue that they cannot be subject to subsection (A)(3) of the Virginia Long Arm statute because at no point in the transactions in question were they committing an act "in

10

this Commonwealth." They further argue that Subsection (A)(4) of the Virginia Long Arm Statute does not apply to them because no defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives any substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Specifically, they argue that unlike more expansive state long arm statutes, the Virginia Statute is designed to grant personal jurisdiction over nonresident defendants acting outside of the state only in certain limited circumstances not satisfied here.

The Court does not dispute Defendants' argument that it is not subject to personal jurisdiction pursuant to (A)(3) of the Virginia Long Arm Statute. Plaintiff's reliance on *Vishay Int'l, Inc. v. Delta Int'l Corp.*, 96 F.2d 1062 (4th Cir. 1982), is misplaced because that case is based on a reading of the North Carolina Long Arm Statute, which uses much broader language than the Virginia Long Arm Statute at issue here. As Defendants have argued, the more analogous case is *Margoles v. Johns*, 483 F.2d 1212 (D.C. Cir. 1973), which interprets a D.C. Long Arm Statute that is identical to the Virginia Long Arm Statute. Indeed, the *Margoles* court expressly distinguished between two types of statutes: those such as the North Carolina statute that are broad and limited only by due process considerations, and other statutes, like the Virginia statute, that are more restrictive. Regarding the more narrow type of statute at issue here, the court stated:

> The statute is plain, easy to understand language–it speaks not of "tortious [conduct]" but of "act," and its structure shows intent that when an act is outside the forum state other significant contacts are necessary before jurisdiction can be exercised. Its interpretation should be so limited.

11

*Id.* at 1219. In light of *Margoles*, it is clear that Defendants' non-resident telephone calls and other communications with FAC and Prillaman in Virginia do not constitute "acts in the Commonwealth" within the meaning of Subsection (A)(3). Because Defendants never acted within the physical boundaries of the Commonwealth, this provision is inapplicable.

Thus, the Court turns to Subsection (A)(4), which imposes personal jurisdiction for acts outside of the Commonwealth only if the actor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(4). As to this point, the Court cannot agree with Defendants' characterization that their contact with Virginia falls outside of this provision and "can only be described as attenuated or fortuitous." Rather, as discussed above, Defendants engaged in persistent and ongoing negotiations with FAC and Prillaman in Virginia by knowingly contacting them in the Commonwealth, during which they sent one or more contracts to Virginia to execution. This contact is significantly more substantial than the contact at issue in *DeSantis v. Hafner Creations*, 949 F. Supp. 419 (E.D. Va. 1996), upon which Defendants rely. In *DeSantis*, the court found that a defendant's national advertisements, free color catalogues, and three isolated product shipments over twelve months to Virginia did not constitute a persistent course of conduct in Virginia. *Id.* at 426. Unlike *DeSantis*, the defendants here were specifically aiming their conduct at Virginia, with the sole objective of pursuing a business opportunity within the state. Accordingly, Defendants' behavior undoubtedly qualifies as a "persistent course of conduct" in which they solicited business within the state, necessarily subjecting them to personal jurisdiction in Virginia pursuant to Subsection (A)(4).

12

For the foregoing reasons, the Court finds that Defendants have had sufficient contact with Virginia in relation to the current dispute to support specific personal jurisdiction over them, in satisfaction of both the Due Process Clause and the Virginia Long Arm Statute.

IV.

Although personal jurisdiction does obtain here, this Court nevertheless may transfer venue pursuant to 28 U.S.C. § 1404 if appropriate. The statute provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether a transfer should be made under § 1404, the district court has broad discretion. *New York, C. & St. L. R. Co. v. Vardaman*, 181 F.2d 769, 771 (8th Cir. 1950); *Berkshire Int'l Corp. v. Marquez*, 69 F.R.D. 583, 589 (E.D. Pa. 1976). In exercising this discretion, the court should weigh all relevant factors to determine if, on balance, action would proceed more expeditiously and the ends of justice would be better served if transfer were effected. *Kline v. Consolidated Rail Corp.*, 461 F. Supp. 326, 327 (E.D. Pa. 1978) (citation omitted). Although a plaintiff's choice of forum is a factor to be considered in determining a question of transfer under § 1404, *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955), a trial court may justifiably find plaintiff's choice of forum to be outweighed by other more compelling considerations. *Moore v. Telfon Communications Corp.*, 589 F.2d 959 (9th Cir. 1978).

In light of the circumstances of the case, and weighing all relevant factors, the Court finds that the ends of justice would be best served if this case were transferred to the Federal District Court for the Eastern District of Wisconsin. Although Defendants have had sufficient contacts

13

with Virginia to render themselves subject to personal jurisdiction here, it remains true that the ultimate locus of this case is Wisconsin. Because of this fact, a variety of factors makes it desirable for this case to be tried in that state rather than in Virginia. First, a Wisconsin forum poses numerous logistical advantages in this case. The fundamental subject of this dispute, the Property, is located solely in Wisconsin. All of Plaintiff's claims arise from the Defendants' behavior within the physical bounds of Wisconsin and concerning a sale of Wisconsin property. Sorenson, Prokos, and Green Lake are all citizens of Wisconsin and at all relevant times during the events at issue remained physically within the bounds of Wisconsin. For this reason, most of the potentially significant evidence in this case, including both physical evidence and non-party witnesses connected to the dispute, inevitably will be located in Wisconsin. To give a few examples, Wisconsin is the location of the building on the Property and all of its contents, potential witnesses and documents as to the relationship between Sorenson and Prokos, and likely various financial institutions from which Prokos allegedly sought financing during the end of the negotiations. In light of these facts, a Wisconsin forum would facilitate the litigation and trial process.

Second, transfer of this case to the Eastern District of Wisconsin would not impose significant hardship to Plaintiff. As owner of the Property in Wisconsin, FAC necessarily has extensive contacts with the state and is familiar with it. Moreover, in light of the dispute, FAC will have significant involvement with Wisconsin regardless of the forum. Notably, FAC is not merely pursuing Virginia malpractice and business interference claims, but also an unlawful detainer claim for Prokos's remaining on the Property, which from the outset necessitates various activity in Wisconsin. Finally, Virginia as a forum poses no special logistical or practical

advantage in adjudicating the dispute. Although settlement negotiations at issue in Complaint #2 did occur within the physical confines of Virginia, there is little reason to believe that relevant evidence will be there, especially as no defendant actually attended those negotiations in person. For this reason, transferring away from Virginia will impose no specialized difficulty during adjudication of the case.

Accordingly, for the foregoing reasons, this matter shall be transferred to the Federal District Court for the Eastern District of Wisconsin.

An appropriate Order shall issue.

ENTERED: /s/ Norman K. Moon
U.S. District Judge

June 8, 2005
Date